UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| United States of America, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-10-294 |
| | § | |
| David W. Stewart, et al., | § | |
| | § | |
| Defendants. | § | |

## Opinion on Summary Judgment

1.    *Introduction.*

The government has sued two partners for tax refunds they had been paid. It says that their income was a commission rather than a return from an investment. The partners say that they earned money from the sale of their interest in a portfolio they managed and that the income should be taxed as capital gains. The partners will prevail.

2.    *Background.*

In March of 2003, Hydrocarbon Capital, LLC, bought a portfolio of oil and gas properties from Mirant Corporation. Because it was new to the oil industry, Hydrocarbon asked the five executives at Mirant who managed the operation of the properties to manage its wells. Those five people then founded Odyssey Capital Energy I, LP. David Stewart and Richard Plato were two of those people.

Odyssey agreed with Hydrocarbon to manage exploration and production of the old Mirant properties. Odyssey operated the wells or worked with other operators. Hydrocarbon had to approve expenses, but Odyssey fully controlled operations.

The deal was initially structured so that Hydrocarbon lent Odyssey $6 million without recourse for working capital. When the assets were sold, Odyssey had a 20% interest in the sale revenue after Hydrocarbon recouped its expenses, its investment, 10% return on its investment, and the loan. Also, the Odyssey partners agreed to limit the salaries they paid themselves. If Hydrocarbon did not profit, the partners earned nothing from the sale.

A little more than a year later, Hydrocarbon sold the portfolio. It recovered its expenses,

its initial investment, its return on investment, and the loan. Odyssey split the remaining revenue with it; Odyssey's 20% interest was worth about $20 million.

On April 15, 2005, Odyssey filed its federal partnership tax return for 2004, reporting ordinary income of $20,106,410. Each partner received a Schedule K-1. Stewart reported taxable income of $5,941,529 on his individual return. Plato reported $2,740,824.

Two years later, Odyssey determined that its income from 2004 was long-term capital gains – not ordinary income. On April 13, 2007, it amended its return from 2004, reporting $20,432,323 from the sale of an asset, and issued the partners a new Schedule K-1.

On May 13, 2007, Stewart amended his return, reporting the capital gains and requesting a refund of $1,086,536 and interest. On August 22, the government asked for a completed Schedule E to support the changes. He sent them one. On November 21, the government asked for a new Form 1040, Schedule D, and Form 6251, because it could not determine how he calculated the numbers. He sent the requested documents.

In November of 2007, a "revenue-agent coordinator" reviewed Odyssey's amended tax return. She was to determine whether to forward the return to be examined or to accept the return for processing. On November 30, after seeing that more than $20 million was moved from ordinary income to capital gains, the coordinator accepted the return. On January 16, 2008, the government formally approved Odyssey's amended return with Form 9984-D and closed the case.

On February 1, 2008, Stewart received a refund of $1,333,067.65. Ten days later, the government received Plato's amended return with a request for a refund of $520,222. Without asking for more information, it sent him a check for $649,072.19 in May. Two of the other partners also received refunds.

The service denied the fifth partner's refund request in December of 2007. The partner amended his return again in January of 2008, and the service opened an investigation. During this examination, the government requested the records from Odyssey's business with Hydrocarbon and ultimately denied that partner's refund in December of 2009.

The government concluded that Odyssey's 20% interest was compensation for services and the partner's earnings should be taxed as ordinary income. It then decided that it had erred in approving the refunds for Stewart and Plato. The government sued them on February 1, 2010, demanding the return of the refunds. It could not sue the other two partners who received refunds because it was too late.

3.    *Capital Gain.*

The government says that Odyssey managed Hydrocarbon's assets and earned a commission that is taxable as ordinary income. It says that no tax partnership existed because:

(a)    The agreement disclaimed a partnership;

(b)    Hydrocarbon contributed and controlled the money, owned the assets, and Odyssey had no money at risk;

(c)    Odyssey was a contract employee that could not spend money or sell the assets without Hydrocarbon's approval; and

(d)    The parties did not have a joint name, jointly file a tax return, or maintain a single accounting ledger.

The partners say that Odyssey's net-profits interest in the portfolio of oil properties is a capital gain. Hydrocarbon and it had a tax partnership; whatever the technical company form, the service allows it to be taxed as a partner with Hydrocarbon because:

(a)    Hydrocarbon contributed the cash capital used to acquire the mineral properties;

(b)    Odyssey contributed (1) operating expenses, (2) technical and entrepreneurial work, and (3) management;

(c)    Odyssey exchanged its time and talent for a share of the profit from the sale – pure contingent appreciation; and

(d)    Although Hydrocarbon had to approve the operations budget, Odyssey devised and implemented it, and it was billed to Odyssey.

Tax partnerships do not depend on contract language.[1] They arise from the reality of relationships. The partners of Odyssey were not car salesmen earning commissions from individual sales. They had an ownership interest in the value of the entire operation. Hydrocarbon contributed the properties and financing, and they contributed their expertise and energy to make a contingent interest in the asset valuable.

Hydrocarbon encumbered its real-property interests when it granted Odyssey an interest in them; although it was not a fee interest, it was an equitable one.[2] Stewart and Plato risked money for that interest by accepting salaries that were lower than the market rate for

---

[1] Haley v. Commissioner, 203 F.2d 815, 818 (5th Cir. 1953).

[2] Patrick H. Martin & Bruce M. Kramer, Williams & Meyers, Oil and Gas Law § 424.1 (2011); T-Vestco Litt-Vada v. Lu-Cal One Oil Co., 651 S.W.2d 284, 291–292 (Tex. App.—Austin 1983).

their work. Hydrocarbon controlled the capital, but the partners were not its servants. They brought their skills and work to a venture about which Hydrocarbon knew nothing. It relied wholly on their recommendations and management. Many partnerships have a financial partner and an operating partner.

This arrangement is no different than flipping a house. The gain realized through sweat equity – the appreciation in the value of the house by fixing it up – is a capital gain. The very reason it is called sweat equity instead of sweat income. In the same way, Odyssey's sweat, their management, increased the value of the capital, the portfolio of properties.

Having purchased a share of the project, the partners managed the portfolio and earned the venture significant profits when it sold. This merger of execution and financing is a partnership, and its profits are long-term capital gains.

4.    *Adjustment.*

The government says that because Odyssey did not ask for a formal adjustment, the service did not approve the new return, and the original return – with ordinary income – still controls. Since the partners' returns conflict with the original return, the refund was incorrect.

The partners say that Odyssey's amended return complied substantially with the requirements for a formal request. They say that the government had enough information to review and approved the return. Since the partnership return was accepted, the partners' amended returns are consistent with it, and the refund was correct.

A request for adjustment of a partnership return need not be on Form 8082 as long as it substantially complies with the regulations. The government says that Odyssey's amended return did not give it the information necessary to start an examination.

When it received the partnership return in 2007, it saw that Odyssey re-categorized more than $20 million from ordinary income to capital gains. That is all it needed to investigate. It had three options: approve the adjustment without investigation, investigate, or do nothing.[3] The government approved Odyssey's request without comment, and the partners' amended returns were correct.

---

[3] 26 U.S.C. § 6227(c)(2) (2012).

5.     *Partnership Proceeding.*

The law requires the government to determine tax liability at the partnership level. To change the tax treatment of an individual partner, the government must first change the treatment by the partnership.[4] The government cannot sue individual partners to change the characterization of their income.[5]

The service approved Odyssey's new return and has never changed its income back to ordinary. The government cannot sue Stewart and Plato without having changed Odyssey's return first.

Even if the court could change the characterization of the income, the original return was submitted in 2005, and the government has been barred since April 15, 2008, from assessing the tax that would flow from a change back to ordinary income.[6]

6.     *Conclusion.*

Odyssey amended its return, and the government approved it, re-characterizing $20 million as capital gains. When Plato asked for a refund, it sent him the money without investigating. When Stewart asked for a refund, it asked for more information and then sent him a check. Having affirmed the change several times, the government may not recover the money. The partners managed property in which they owned an interest and earned a profit for their work from its sale. It is characterized correctly as capital gain. The government will take nothing from David W. Stewart, Tara F. Stewart, Richard K. Plato, and Tina M. Plato.

Signed on August 20, 2015, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[4] 26 U.S.C. § 6221 (2012).

[5] 26 U.S.C. § 6226 (2012).

[6] 26 U.S.C. § 6501 (2012).